David Morales WSBA# 46802
Northwest Justice Project
311 N. 4th St, Ste. 201
Yakima, WA 98901
509.574.4234

María D. Velázquez WSBA #46921
Northwest Justice Project
300 Okanogan Ave, Ste. 3A,
Wenatchee WA 98801
509.664.5101

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Ernesto Avina Espinoza,
Jesus Bello Paredes,
Jose Rutilo Gamboa Núñez,
Lucia Yunuen Gamboa Urbina,
Maria Librada Espinoza Nicolas,

   Plaintiffs,

 vs.

Perrault Farms, Inc.;
Jeffrey Perrault;
Judy Perrault and
Steve Perrault, and the marital
community thereof;

   Defendants.

No.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

## I. PRELIMINARY STATEMENT

In April of 2017, Defendant Perrault Farms, Inc. (hereinafter "Perrault")

COMPLAINT FOR DAMAGES AND
INJUNTIVE RELIEF- 1

Northwest Justice Project
311 North 4th Street, Suite 201
Yakima, WA 98901
Tel. (509) 574-4234  Fax (509) 574-4238

offered Plaintiffs 3-month contracts to work in their blueberry and hop fields. Defendant Perrault also hired H-2A foreign workers for the same jobs. The H-2A statute and regulations require that local workers be given job preference, but soon after the arrival of the H-2A workers, Plaintiffs were all fired or constructively discharged by Defendant Perrault. Defendants' actions were unfair and deceptive in violation of both Washington's Consumer Protection Act, RCW 19.86.010 et seq. ("CPA"); and the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§ 1801 et seq. ("AWPA").

## II.    JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (Federal Question) and 29 U.S.C. § 1854 (AWPA).

2. This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 (Supplemental Jurisdiction).

3. The proper venue for this action is in the Eastern District of Washington pursuant to 28 U.S.C. § 1391, as the events giving rise to Plaintiffs' claims occurred in Yakima County, Washington.

## III.    PARTIES

4. At all times relevant to this complaint, Plaintiffs were seasonal agricultural workers within the meaning of 29 U.S.C. § 1802(10)(A).

5. Plaintiffs Ernesto Avina Espinoza (hereinafter "Plaintiff E. Espinoza"), Jesus Bello Paredes (hereinafter "Plaintiff J. Bello"), Jose Rutilio Gamboa Núñez (hereinafter "Plaintiff J. Gamboa"), Lucia Yunuen Gamboa Urbina (hereinafter "Plaintiff L. Gamboa"), Maria Librada Espinoza Nicolas (hereinafter "Plaintiff M. Espinoza") were hired to work for Perrault in or around April 2017.

6. Perrault is a corporation, having its principal place of business in Toppenish, Washington.

7. Perrault is an agricultural employer within the meaning of AWPA, 29 U.S.C. § 1802(2).

8. Defendant Jeffrey Perrault (hereinafter "Defendant J. Perrault") is an agricultural employer within the meaning of AWPA, 29 U.S.C. §1802(2).

9. Defendant J. Perrault is the Vice President of Perrault and a Governor on its board. In 2017, he was the Human Resources Director.

10. At all times relevant to this complaint Defendant J. Perrault operated the farm and made assurances to the Department of Labor on behalf of the corporation.

11. Defendant J. Perrault at all times relevant to this complaint lived in Yakima County, Washington.

12. Defendants Steve Perrault and Judy Perrault are agricultural employers within the meaning of AWPA, 29 U.S.C. §1802(2), in that they own Perrault jointly as a marital community.

13. Defendants Steve Perrault and Judy Perrault at all times relevant to this complaint lived in Yakima County, Washington.

## IV.   STATEMENT OF FACTS

14. On or about February 2017, Defendant J. Perrault on behalf of Perrault applied to the U.S. Department of Labor for permission to import 75 H-2A workers to work in the blueberry harvest and hop harvest pursuant to 20 C.F.R. § 655.131.

15. Final certification of an application for H-2A workers requires that the agency find that (a) U.S. workers are not available to perform the jobs, and (b) the employment of foreign workers will not adversely affect wages and working conditions of U.S. workers engaged in similar employment. 8 U.S.C. § 1188(a)(1); 20 C.F.R. § 655.103.

16. As part of the H-2A application process, Defendants Perrault and J. Perrault also filed a job order with the Washington State Employment Security Department that described the number of workers requested, job duties, period of employment, and all the benefits, wages, and working conditions offered to both U.S. and H-2A workers hired under the job order.

17. Defendants Perrault and J. Perrault agreed, as required by regulation, to abide by obligations imposed on them by the H-2A regulations and to comply with applicable Federal, State, and local employment-related laws. 20 C.F.R. § 655.1305(e).

COMPLAINT FOR DAMAGES AND
INJUNTIVE RELIEF- 4

Northwest Justice Project
311 North 4th Street, Suite 201
Yakima, WA 98901
Tel. (509) 574-4234  Fax (509) 574-4238

18. Defendants Perrault and J. Perrault's 2017 job order constituted a job offer for employment as a farmworker at Perrault's hop and blueberry harvests from April 4, 2017 to July 1, 2017, at the greater of the hourly adverse effect wage rate of $13.38 per hour or the prevailing piece rate, for 40 hours per week.

19. The 2017 job order lists one production standard: that the workers be able to do the first training of hops at 382.28 strings per hour. No other specific production standard is listed.

20. Perrault's 2016 job order for the same farm listed no specific production standards, including no 382.28 strings per hour.

21. Perrault utilized MAS Labor H-2A, LLC as an "Employer Agent" in 2017.

22. Perrault agreed, as required by 20 C.F.R. § 655.135(a), to hire any qualified U.S. worker who applied for the job until completion of 50% of the period of the work contract under the 2017 job order.

23. Perrault advertised these jobs with the state workforce agency and through a local newspaper, the Yakima Herald Republic in 2017.

24. Perrault's 2017 newspaper job advertisement stated "75 Positions- Temporary seasonal work planting, cultivating, harvesting blueberries, hops, from 4/4/17 to 7/1/17 at Perrault Farms, Inc. Toppenish, WA in Yakima County… $13.38/hr or current applicable AEWR or applicable piece rate depending on crop

COMPLAINT FOR DAMAGES AND
INJUNTIVE RELIEF- 5

Northwest Justice Project
311 North 4th Street, Suite 201
Yakima, WA 98901
Tel. (509) 574-4234  Fax (509) 574-4238

activity. Raise/bonus at employer discretion. Workers are guaranteed ¾ of the work hours total period…"

25. Perrault's H-2A contract would have included 90 weekdays and 13 Saturdays during the relevant period, which totals 695 hours of total work.

26. Perrault mailed letters to former employees in 2017 to offer them jobs under the H-2A contract.

27. Perrault advertised these jobs in local newspapers in the states of Idaho, Oregon, and California in 2017.

28. Perrault's 2017 H-2A contract lists only four infractions that will cause immediate dismissal: falsifying records, fighting, possession of dangerous weapons, and threats.

29. Perrault's 2017 H-2A contract lists the following procedure for discipline: first offense: oral warning and correction, second offense: written warning and unpaid leave for balance of the day, and third offense: immediate discharge with written fact statement.

30. Perrault's 2017 H-2A contract states that if a worker has "five consecutive workdays of unexcused absence" it is treated an abandonment.

31. Perrault's 2017 H-2A contract makes a worker ineligible for future employment, if the worker quits or is terminated prior to the end of the H-2A contract.

COMPLAINT FOR DAMAGES AND
INJUNTIVE RELIEF- 6

Northwest Justice Project
311 North 4th Street, Suite 201
Yakima, WA 98901
Tel. (509) 574-4234  Fax (509) 574-4238

32. Perrault had subsequent H-2A contracts approved by the Department of Labor in 2018 and 2019.

33. The arrival of the H-2A guest workers Perrault hired from Mexico was delayed until on or about April 21.

34. Perrault has a high need for many workers in early April due to the nature of the crops it grows, primarily blueberries and hops.

35. Perrault began to recruit and hire local workers, both because of its need for labor and the requirements of the H-2A program.

36. Between April 4-23, 2017, Perrault hired Plaintiffs.

37. Perrault was aware that it would have too many workers once the H-2A workers arrived, and that it could not fulfill the contract for all of the workers it hired.

38. Although Perrault hired over 100 local workers, it took no action to curtail its transport of 75 H-2A workers from Mexico, as required by the H-2A program which seeks the preference of local workers.

39. Perrault recruited Plaintiffs L. Gamboa, J. Gamboa, E. Espinoza, and M. Espinoza through a letter, which was sent to former employees notifying them on the opportunity to apply for jobs.

40. Plaintiff L. Gamboa's husband received such a letter from Perrault as a former employee.

COMPLAINT FOR DAMAGES AND
INJUNTIVE RELIEF- 7

Northwest Justice Project
311 North 4th Street, Suite 201
Yakima, WA 98901
Tel. (509) 574-4234  Fax (509) 574-4238

41. Plaintiffs L. Gamboa, J. Gamboa, E. Espinoza, and M. Espinoza called Perrault and were notified of the opportunity to show up at an orientation session.

42. Perrault recruited Plaintiff J. Bello through an announcement on the community radio station KDNA, where the announcer promised that there was work available at Perrault that paid between $14 and $16 an hour.

43. Plaintiff J. Bello called Perrault after hearing the announcement on the radio on or about April 10, 2017.

44. Perrault asked prospective employees to attend an orientation session, which was given by Brenda Martinez (hereinafter "Ms. Martinez).

45. Ms. Martinez was in Perrault's Human Resources Department.

46. Ms. Martinez acted as an agent of Perrault in her communications with Plaintiffs and other employees of Perrault at all times relevant to this complaint.

47. Prior to starting their first day of work at Perrault, the workers went through an orientation that was conducted by Ms. Martinez.

48. During orientation, Ms. Martinez communicated that workers would be trained and shown to do to each job assignment.

49. During orientation, Ms. Martinez communicated that workers could receive piece rate wages, receive higher wages, and bonuses.

50. During orientation, Ms. Martinez communicated that signing an H-2A contract was necessary in order to receive work.

51. During orientation, Ms. Martinez communicated that workers who did not finish their contracts would not be re-hired in future years.

52. During orientation, Ms. Martinez communicated that workers would receive lunch breaks, the right to use restrooms, have a place to wash their hands, and rest breaks.

53. During orientation, Ms. Martinez communicated that workers could be fired after having been given three warnings.

54. Perrault hired each of the Plaintiffs, and provided them with copies of the applicable H-2A clearance order.

55. Plaintiffs signed an H-2A contract and were hired by Perrault.

56. Perrault, upon information and belief, fired 93 workers between April 4 through July 1, 2017, during its H-2A contract period. Of those 93 workers fired, only one (1) was an H-2A worker while the other 92 were local U.S. workers.

57. Plaintiffs J. Gamboa, J. Bello, M. Espinoza, and E. Espinoza are monolingual Spanish speakers.

58. Plaintiff L. Gamboa speaks English and Spanish.

**Plaintiff Lucia Gamboa**

59. Plaintiff L. Gamboa began work on or about April 17, 2017.

60. Perrault's supervisors, Rosalba, Maria and two other unknown

supervisors pressured Plaintiff L. Gamboa to meet a high production standard that was not listed in the contract.

61. Perrault's supervisors repeatedly told Plaintiff L. Gamboa along with her work crew, that they would lose their job if they did not finish the entire field in a day.

62. Perrault's supervisors pressured Plaintiff L. Gamboa to work fast and in a bent down position.

63. Defendant J. Perrault placed warnings in the file of Plaintiff L. Gamboa without giving her notice.

64. On April 21, 2017 Plaintiff L. Gamboa, was dressed in a similar manner to her foreperson, who was standing.

65. Defendant J. Perrault, fired Plaintiff L. Gamboa for allegedly standing for five minutes after having witnessed the field from a distance.

66. Defendant J. Perrault, lacked adequate cause to fire Plaintiff L. Gamboa.

67. Perrault did not follow its protocol as laid out in the H-2A contract.

68. Plaintiff L. Gamboa only worked 47.5 hours out of the 594 possible contract hours had she been allowed to complete the H-2A contract ending on July 1, 2017.

69. Plaintiff L. Gamboa suffered economic damages as a result of being

unjustly fired by Defendants Perrault and J. Perrault in 2017.

70. Plaintiff L. Gamboa has suffered economic damages as a result of being ineligible to work at Perrault in 2018 and 2019.

**Plaintiff Jose Gamboa**

71. Plaintiff J. Gamboa began work at Perrault on April 17, 2017.

72. Defendant J. Perrault pressured Plaintiff J. Gamboa to work at an extremely fast speed and would get upset if he took breaks or slowed down.

73. In the fourth week of April 2017, H-2A workers began to arrive in the workplace.

74. Perrault's supervisor, Julio, made it clear that local workers like Plaintiff J. Gamboa would not be needed with the arrival of H-2A workers.

75. On or about April 24, 2017 Plaintiff J. Gamboa was told to report at a field and, after admitting he did not know where it was, was told to wait there for further instructions.

76. Defendant J. Perrault arrived and became agitated at Plaintiff J. Gamboa for not finding the field.

77. Defendant J. Perrault fired Plaintiff J. Gamboa because of the field problem and because he believed that someone in Plaintiff J. Gamboa's crew was drinking on the job.

78. Perrault fired Plaintiff J. Gamboa without following the procedure

outlined in the contract.

79. Plaintiff J. Gamboa was not given a warning prior to being fired.

80. Plaintiff J. Gamboa worked 47.5 hours out of the 594 hours had he been allowed to finish the contract on July 1, 2017.

81. Plaintiff J. Gamboa has suffered economic damages as a result of being unjustly fired by Defendants Perrault and J. Perrault in 2017.

82. Plaintiff J. Gamboa has suffered economic damages as a result of being ineligible to work at Perrault in 2018 and 2019.

**Plaintiff Jesus Bello Paredes**

83. Plaintiff J. Bello started working for Perrault on April 17, 2017.

84. Perrault's supervisor, Antonio, imposed multiple production standards while he was doing trellis repair work, and other jobs.

85. Plaintiff J. Bello was threatened with termination if he failed to meet these standards.

86. These production standards were not listed in the H-2A contract.

87. Perrault denied Plaintiff J. Bello the opportunity to take a rest break and use the restroom.

88. Plaintiff J. Bello attempted to make a grievance with Ms. Martinez, who told him that his supervisor, Antonio, could treat him poorly because he was earning a lot of money.

89. On or about April 22, 2017, Plaintiff J. Bello left work at Perrault because the violations of the contract.

90. Plaintiff J. Bello worked 38 hours out of the 594 possible hours had he been able to complete the entire H-2A contract.

91. Plaintiff J. Bello has suffered economic damages as a result of being unjustly constructively discharged by Defendants Perrault and J. Perrault in 2017.

92. Plaintiff J. Bello has suffered economic damages as a result of being ineligible to work at Perrault in 2018 and 2019.

**Plaintiff Maria Espinoza**

93. Plaintiff M. Espinoza began work for Perrault on April 5, 2017.

94. Perrault's supervisors, told Plaintiff M. Espinoza that she was not working fast enough; and pressured her to work harder because the bosses were paying good money.

95. Perrault's supervisors, held Plaintiff M. Espinoza to a production standard that was not in the contract for nailing twine. There was no production standard listed in the contract.

96. Plaintiff M. Espinoza was not given any training on how to use a nail gun prior to nailing twine.

97. Defendant J. Perrault fired Plaintiff M. Espinoza for not meeting the production standard on the morning of April 17, 2017 around 9:00 a.m.

98. Plaintiff M. Espinoza was fired along with two other women, who were also using nail guns to nail twine.

99. Perrault's H-2A contract does not list this, or any, production standard for twinning or clipping.

100. Plaintiff M. Espinoza only worked 67 hours out of a possible 688 total hours had she been allowed to finish out the H-2A contract.

101. Plaintiff M. Espinoza has suffered economic damages as a result of being unjustly fired by Defendants Perrault and J. Perrault in 2017.

102. Plaintiff M. Espinoza has suffered economic damages as a result of being ineligible to work at Perrault in 2018 and 2019.

**Plaintiff Ernesto Espinoza**

103. Plaintiff E. Espinoza began work for Perrault on April 4, 2017.

104. Defendants Perrault and J. Perrault subjected Plaintiff E. Espinoza to a production standard immediately after beginning work.

105. Defendants Perrault and J. Perrault expected Plaintiff E. Espinoza to meet a different production standard for nearly every task he did.

106. Defendants Perrault and J. Perrault told Plaintiff E. Espinoza that if he did not meet the production standard he would be fired.

107. Defendant J. Perrault fired Plaintiff E. Espinoza while he was doing

twining work, approximately two and half hours after firing his wife, Plaintiff M. Espinoza on April 17, 2017.

108. Defendant J. Perrault allegedly fired Plaintiff E. Espinoza because he failed to meet a production standard.

109. Perrault's H-2A contract does not list any, production standard for twining for which Plaintiff E. Espinoza was fired.

110. Defendant J. Perrault fired Plaintiff E. Espinoza without the benefit of the warnings listed in the contract protocol.

111. Plaintiff E. Espinoza worked 102 out of a possible 695 hours had he worked the entire H-2A contract.

112. Plaintiff E. Espinoza has suffered economic damages as a result of being unjustly fired by Defendant in 2017.

113. Plaintiff E. Espinoza has suffered economic damages as a result of being ineligible to work at Perrault in 2018 and 2019.

**Every Plaintiff**

114. Plaintiffs were prepared to perform their obligations under their H-2A contract with Perrault.

115. Perrault breached its contract with Plaintiffs by imposing a minimum production requirement that was not included in their H-2A contract.

116. Perrault breached its contract with Plaintiffs by imposing different

terms and conditions than those listed in the H-2A contract that each Plaintiff signed.

117. Perrault breached the contract by disciplining and/or terminating Plaintiffs without adequate cause as set out the H-2A contract.

118. Perrault knowingly provided false information to Plaintiffs when its agent stated that employees would receive warnings before termination.

119. Perrault knowingly provided false information to Plaintiffs when Perrault's agent stated that signing the H-2A contract was necessary to receive the benefits of the contract.

120. The Defendants undertook all of the actions and omissions alleged in the paragraphs above either directly or through their agents.

121. Perrault has banned Plaintiffs from working there again for failing to finish their H-2A contracts.

122. Plaintiffs suffered damages as a result of Defendants' actions.

## V.    CAUSES OF ACTION

### A. FIRST CLAIM FOR RELIEF: AGRICULTURAL WORKER PROTECTION ACT

123. All facts alleged above are reasserted here in support of Plaintiffs' cause of action set forth below.

124. Defendants intentionally violated the Plaintiffs' rights under AWPA by:

a. Violating their working arrangement with Plaintiffs without justification. 29 U.S.C. § 1832 (c);

b. Knowingly providing false and misleading information regarding the terms and conditions of employment, in violation of 29 U.S.C. §1831 (e);

For each such violation of the AWPA, Plaintiffs are each entitled to recover their actual damages or up to $500 per violation in statutory damages. 29 U.S.C. § 1854(c) from all Defendants.

## B. BREACH OF EMPLOYMENT CONTRACT

125. Plaintiffs re-allege and incorporate by reference the foregoing paragraphs 14-121 of this Complaint.

126. Defendants Perrault and J. Perrault entered into employment contracts with Plaintiffs.

127. The employment contract included the work, the pay rate, the bases for discipline or termination, and an assurance that the Employer would comply with all applicable federal and state employment-related laws.

128. Defendants Perrault and J. Perrault materially breached their contracts with Plaintiffs by imposing minimum productivity requirements that were not set out in the H-2A contract, as a basis for discipline and/or employment termination.

129. Defendants Perrault and J. Perrault materially breached their contract with Plaintiffs by failing to provide adequate cause for disciplinary actions.

130. Defendants Perrault and J. Perrault materially breached their contracts with Plaintiffs by failing to adhere to the disciplinary and firing procedure set out in the contract.

131. Defendants Perrault and J. Perrault's treatment of Plaintiffs breached the covenant of good faith and fair dealing preventing Plaintiffs from being able to receive the benefits of the contract.

132. Because of Defendants Perrault and J. Perrault's breach, Plaintiffs suffered substantial injury; Defendants are therefore liable to Plaintiffs for unpaid wages, consequential damages and reasonable attorney's fees under RCW 49.48.030.

## C. CONSUMER PROTECTION ACT

133. Plaintiffs re-allege and incorporate by reference the foregoing paragraphs 14-122 of this Complaint.

134. Perrault committed unfair and deceptive practices in violation of Washington's Consumer Protection Act, RCW § 19.86.010-920 by:

    a. Omitting the fact that Defendants planned to require Plaintiffs to meet specific production standards as a condition of continued employment under the contract.

    b.   Omitting to tell employees when they received disciplinary warnings.

    c.   Omitting that Defendant Perrault needed workers for a few weeks, until the H-2A workers arrived.

135. Defendant Perrault's unfair or deceptive conduct occurred in the course of trade or commerce and had the capacity to deceive a substantial portion of the public.

136. A substantial portion of the public was eligible for the advertised jobs.

137. Plaintiffs would not have taken on the job had they been aware of these omissions.

138. Plaintiffs suffered injury to their property.

139. Defendant Perrault's conduct caused Plaintiff's injury.

## **PRAYER FOR RELIEF**

Plaintiffs ask this Court to Grant them the following relief:

a. Award each of the Plaintiffs actual or statutory damages of up to $500, for each of Defendant's violations of AWPA, pursuant to 29 U.S.C. § 1854(c)(1);

b. Award Plaintiffs their expectation damages for breach of contract;

c. Award each of the Plaintiffs treble damages up to $25,000 for harm to their property pursuant to RCW 19.86.090;

COMPLAINT FOR DAMAGES AND
INJUNTIVE RELIEF- 19

Northwest Justice Project
311 North 4th Street, Suite 201
Yakima, WA 98901
Tel. (509) 574-4234  Fax (509) 574-4238

d.  Award Plaintiffs their costs and reasonable attorney fees in this matter pursuant to the Consumer Protection Act, RCW 19.86.090, RCW 49.48.030 and any other applicable grounds;

e.  Enjoin Defendant Perrault under the Consumer Protection Act from disqualifying Plaintiffs, and any workers, from working at Perrault Farms in the future based on failure to complete the 2017 contract.

f.  Award Plaintiffs pre-judgment and post-judgment interest to the full extent authorized by law; and

g.  Award Plaintiffs such other or further relief as the Court finds appropriate and just.

Respectfully submitted, this _____ day of December, 2019.

NORTHWEST JUSTICE PROJECT

By: s/ David Morales
David Morales, WSBA No. 46802
Attorney for Plaintiffs

By: s/María D. Velázquez
María D. Velázquez, WSBA No. 46921
Attorney for Plaintiffs